Lullus J. Ennis, Appellee, v. Vincent A. Connery et al., Appellants.

## Gen. No. 15,036.

CONTRIBUTORY NEGLIGENCE—*when person crossing street guilty of.* A person crossing a public street is bound to be watchful for teams every moment of the time and if he voluntarily gets himself into a position by reason of which he suffers injury, he is guilty of contributory negligence and cannot recover.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. WILLIAM MCSURLY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed. Opinion filed July 15, 1910.

H. L. HOWARD, for appellants; O. W. DYNES, of counsel.

J. D. RYAN, for appellee.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

Plaintiff brought suit against appellants, Vincent A. and Michael M. Connery, doing business as Connery Brothers, and the Illinois Brick Company, a corporation, jointly, to recover damages for personal injuries sustained in being run upon, if not run over, by a coal wagon. After the suit was brought plaintiff covenanted not to prosecute any suit against the Brick Company, discontinued the suit as to it and filed an amended declaration against appellants only. Upon a trial by jury plaintiff recovered a judgment for $5000. Appellants are now seeking to procure a reversal of that judgment.

Upon a careful consideration and analysis of the evidence we find no negligence chargeable to the Connery Brothers. It appears that at about 8:30 o'clock in the morning of June 2, 1905, the plaintiff being somewhat late to his place of employment, came from a station of the elevated railroad on Congress street and, after going north, from Congress street, a distance of about eighty feet, upon the sidewalk on the east side of State street, undertook to cross State street, diagonally, in a northwesterly direction to the west side of that street. While he was attempting to make that crossing "on a jog or a run" the accident to plaintiff happened. State street is a north and south street and has a driveway 51 feet and 10 inches wide from curb to curb where plaintiff attempted to cross. In the center of the street, approximately, there are two street car tracks placed at a distance of four feet and ten and one half inches apart. The east rail of the east track lies substantially, twenty-four feet from the east curb. There is no material conflict of fact in the evidence. Plaintiff was the principal witness and practically the only witness as to the circumstances under which he was injured. The west street car track was the south-bound track and the east street car track was the north-bound track, and in testifying the plaintiff so spoke of them.

Plaintiff, as stated, was a little late on the morning in question and should have been at his place of employment at

the time the accident occured. Before starting from the sidewalk to cross the driveway, according to his testimony, he looked and found the street comparatively clear. In crossing diagonally toward the north he came to the south-bound track where he was stopped, between the two tracks, by a mule team coming south "rapidly" with an empty brick wagon. He stopped when this team was about twenty-five or thirty feet from him. This team was being driven in the south-bound track at "a very fast trot"—at a speed of "at least twelve miles an hour." When this team passed him he "shouted" at the driver for driving so fast. Then looking he observed another mule team with an empty brick wagon following the first one. These two teams belonged to the Illinois Brick Company. The second team was about thirty to fifty feet behind the first one and was coming at the same rate of speed. It then appeared to him that he would not have time to cross in front of the second mule team. As he heard a noise, or something otherwise attracted his attention, he looked back and discovered a loaded coal wagon with three horses coming toward him from the south, in the north-bound track and within ten feet of him. This coal wagon was in the possession and control of the Connery Brothers. The plaintiff testified the coal wagon came at a fairly rapid speed but not nearly as rapid as that of the brick wagons. The driver of the coal wagon testified that he came along at a walk and with 12,200 pounds of coal in his wagon. When plaintiff discovered the coal wagon he believed himself in danger, as he states. He then began to shout and turned and ran north in order to get behind the second brick wagon. When he had gone, as he presumes, about ten feet the mule nearest him swayed or "swung out over the car track" and knocked him down under the horses attached to the coal wagon. The hind foot of one of the horses struck one of his ankles and splintered it seriously. The driver of the coal wagon, however, having his feet against the dashboard of his wagon, "jerked the horses so he almost sat them back" and stopped the coal wagon with one of its front wheels

on plaintiff's leg. The wheel did not pass over plaintiff's leg but was subsequently backed off.

Although the coal team had been coming at a fairly rapid speed, according to plaintiff, that, together with the other evidence herein, would have afforded no ground for finding the driver of the coal wagon guilty of negligence. But to us the testimony and circumstances indicate very clearly that the coal wagon came along at a walk. It is not surprising that under the circumstances plaintiff was unable to accurately judge of the coal team's speed in the ten feet he saw it travel.

Plaintiff voluntarily got himself into the position which brought about his injury. When he chose to cross the street in the manner he did it behooved him to be watchful for teams every moment of the time. Had he not stopped to shout at the driver of the first mule team but instead looked about him he would undoubtedly not have been injured. At all events we find no negligence on the part of the driver of the coal wagon. The judgment must be reversed.

*Reversed.*